## Potter Title & Trust Co., Guardian, Appellant, *v.* Braum et al.

Argued October 4, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Joseph M. Friedman,* with him *H. P. Eberharter,* for appellant.—Any transaction founded on deceit, deception, or trick, any artifice whereby the right or interest of another is injured, is plainly a fraud: Geiger's Est., 48 Pa. C. C. R. 85; Waterhouse v. Waterhouse, 206 Pa. 433; Pringle v. Pringle, 59 Pa. 281.

A voluntary bond payable at the maker's death given for the purpose of defrauding the maker's wife of her rights in his estate, cannot be sustained, where the donee is a party to the fraud: Lonsdale Est., 29 Pa. 407; Wells v. Bunnell, 160 Pa. 460; Young's Est., 202 Pa. 431; Divilbiss's Est., 13 Pa. Dist. R. 503; Potter v. Trust & Safe Dep. Co., 199 Pa. 366.

*Franklin A. Ammon,* for appellees.—To deprive the wife of her succession is not fraud: Parthimer's Est.,

1 Pearson 433; Shaffer v. Hoke, 80 Pa. Superior Ct. 434; Benkart v. Com. T. Co., 269 Pa. 257; Pringle v. Pringle, 59 Pa. 281; Lines v. Lines, 142 Pa. 149; Windolph v. Trust Co., 245 Pa. 349.

A married man has power to dispose of his personal property by gift inter vivos or donatio mortis causa: Ellmaker v. Ellmaker, 4 Watts 89; Pringle v. Pringle, 59 Pa. 281.

Natural love and affection and services rendered by a son to a father, is sufficient consideration to sustain the assignments and the gift: Ross's App., 127 Pa. 4; Doran v. McConlogue, 150 Pa. 98; Wendt's Est., 14 Pa. Superior Ct. 644; Safe Deposit & Trust Co. v. Kelly, 159 Pa. 82; Campbell v. Brown, 183 Pa. 112.

OPINION BY MR. JUSTICE FRAZER, November 26, 1928:

The bill in this case, filed on behalf of Gertrude L. Braum, widow of August Braum, against Joseph M. Braum and other children of her husband by an earlier marriage, asks the court to decree a number of mortgages made, and others assigned by decedent in his lifetime, to Joseph M. Braum, to be the property of the estate of August Braum. The court below so decreed as to mortgages executed by decedent upon real estate owned by him, refusing however to interfere with the assignment of mortgages upon property of third persons formerly held by him. Plaintiff's appeal followed.

On January 9, 1922, plaintiff's ward, then sixteen years of age, married August Braum, a widower, well advanced in years and the father of defendants, all adults. Three months later, following marital differences, they separated, and did not live together again as husband and wife. Soon after the separation Braum made a will in which he gave to his wife "just what she is entitled to under the law and no more."

At the time of separation, Braum owned improved real estate in Allegheny County worth in the neighborhood of $38,000. He also owned nineteen mortgages

aggregating approximately $65,000, upon other real estate in Allegheny County. Shortly after the separation, he assigned these nineteen mortgages to his son, Joseph M. Braum, the principal defendant in the court below, and in addition thereto executed and delivered to him eight mortgages, amounting altogether to $19,400, upon his own properties. The father received no money consideration for the eight mortgages. The court below found as a fact that two motives prompted the making of the assignments and the execution of the mortgages: First, to compensate his son for services rendered over a period of years when the latter worked for his father for a merely nominal consideration; and, secondly, to hinder his wife from sharing in his estate.

August Braum died January 23, 1924. The Orphans' Court of Allegheny County awarded plaintiff her share of the estate as the surviving spouse of decedent; this decree was affirmed by the Superior Court: Braum's Est., 88 Pa. Superior Ct. 109.

It is to be noted that the bill refers to two separate transactions, (1) the assignment of mortgages upon real estate of third persons held by decedent; and (2) execution of mortgages upon his own real estate. With the second transaction we are not now concerned, since the decree of the court below was in favor of plaintiff upon this point, and defendants have taken no appeal. Accordingly the sole question to be decided is the validity of the assignments of the nineteen mortgages, a part of the personal property of decedent.

It is well settled that a wife's interest in her husband's personal property does not attach before his death, and until that time the husband may dispose of such property by voluntary gift inter vivos, without his wife's consent and free from any claim on her part, provided collusion to defraud the wife is not established; if such intention does appear, the gift will be set aside; if it is not established, the gift will stand; and, in determining this question, fraud will not be predicated on the mere

intent of the husband to deprive his wife of her distributive share in his estate: Windolph v. Girard Trust Co., 245 Pa. 349, 363, and cases there cited.

Counsel for plaintiff have cited to us several authorities to the effect that a gift made not in good faith, but with fraudulent intent to deprive the wife of her rights, will be set aside. It is true, as above indicated, a fraudulent intent will defeat the gift. Good faith is essential. We have said, however, that the "good faith" required of the donor in making a valid disposition of his property during his lifetime does not refer to the purpose to affect his wife, but to the intent to divest himself of the ownership of the property: Benkart v. Commonwealth Trust Co., 269 Pa. 257, 259.

The only evidence in the case before us which in any way tends to establish complainant's charge of fraud is to be found in the testimony of Charles M. Shoaf, the scrivener, who drew the mortgages and the assignments. When asked what August Braum, Senior, said in connection with his purpose in executing these mortgages to his son, he testified as follows: "August Braum sent for me to come down to his home. I don't know the date, but it was about the time, if I recall, of the unpleasantness with his wife and they separated. He told me there had been considerable dissatisfaction in his home; that his children were mad at him for his marriage and that they were not on speaking terms, the most of them, and the only one that was speaking to him and recognizing him and doing anything for him was Joe; that he had a lot of mortgages that he held against other properties and that he wanted to assign these mortgages over to Joe. Q. And if so, what did he say was his purpose in mortgaging his properties to Joe? A. He had two purposes as he cited them to me......He didn't want his wife to get anything and he said he owed it to Joe and wanted Joe to have the residue of his estate. Q. And did that same reason apply with reference to the assignments, to the mortgages that were assigned? A. Yes,

sir...... Q. Do you know or can you recall who, if anybody, was present when these assignments were made? A. I think that Joe was present. I am not sure, but I think he was, and perhaps some of the others......: Q. Then, as you say,—not to repeat,—one of the principal reasons for the giving of these mortgages by August Braum, Senior, to his son, Joseph M. Braum, was so that his wife should not share in his estate? A. One of the reasons was that he did not want her to have anything, and the other reason was that he wanted Joe to have everything."

The evidence quoted above amounts to nothing more than a statement to the effect that August Braum's motive in making the assignments was to deprive his wife of her share in his property. We have seen that this, standing alone, is not such bad faith as to constitute the fraudulent intent necessary to defeat the gift. Furthermore, it does not clearly appear that the son was present when his father disclosed his intentions to the scrivener. It seems, therefore, that the charge of collusion cannot be sustained.

Furthermore, the court below found as a fact, and there is evidence to support the finding, that, in addition to the desire to frustrate his wife's claim against his property, August Braum had another motive, namely, to compensate his son for the many years of service which the latter had rendered to his father for a mere nominal consideration. In view of this finding, and of the failure of plaintiff to produce testimony of collusion, we are not prepared to say that the gift of the nineteen mortgages was made with a fraudulent intent. It follows that the decree should be affirmed.

Decree affirmed at the cost of appellant.