*Decision will be entered under Rule 50.*

ANNA A. FRANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53785, 59841. Promulgated May 11, 1933.

*William A. Wilson, Esq.*, for the petitioner.
*M. M. Mahaney, Esq.*, for the respondent.

OPINION.

GOODRICH: In these proceedings, which were consolidated for hearing, petitioner asks for the redetermination of deficiencies in income taxes of $3,402.62 for 1928 and $4,182.42 for 1929, the greater part of which results from respondent's action in including in her income for these years amounts of $29,678.42 and $42,926.56, respectively, paid to her by a trustee. As our findings of fact we adopt the statement agreed to at trial by counsel for the parties, together with the exhibits in evidence. For the purposes of this report the facts need not be recited in full.

Petitioner is the widow of Abraham Frank, who died a resident of Pittsburgh, Pennsylvania, on March 6, 1928, leaving a will whereby he left all of his property to petitioner or to his children should his wife predecease him. The will was executed on January 27, 1926. Thereafter, on March 3, 1927, Frank established a trust by written instrument transferring to the Bank of Pittsburgh National Association, as trustee thereunder, the greater part of his property, exclusive of real estate. On the same day he executed a codicil to his will by which he named this bank as coexecutor thereof.

Under the trust instrument, Frank retained the power to direct the trustee with respect to the disposition of the transferred property and the reinvestment of the proceeds thereof. He retained also the power to terminate the trust and recover the property upon short notice at his election. He was to be paid the income of the trust during his life and, after his death, the trust was to continue and the income therefrom to be paid to petitioner during her life. Upon the death of the widow, the trust property was to be distributed to the donor's children, unless they elected to continue the trust.

Following Frank's death, his will was probated and petitioner, exercising the privilege granted her by the Pennsylvania statute, filed her election to take under the will, thus relinquishing her claim of dower in the decedent's estate. Shortly thereafter there was distributed to petitioner by the executors, in accordance with the order of the probate court, the sum of $21,470.10, being the net proceeds of the property (exclusive of that held by the trustee) of which Frank died possessed. The value of the trust property was taxed as a part of the decedent's estate, both by the Commonwealth and by the Federal Government. The distribution made to petitioner by the

executors was not included in her income, either by her upon her return, or by respondent in the determination of the deficiencies here involved, and no issue is raised respecting this distribution.

Respondent has included in petitioner's income for the years before us the amounts of distributable income of the trust paid to her by the bank as trustee, and this action she challenges. As petitioner views the case, the sole issue for our determination is as to the legal import of the trust instrument. She contends it was testamentary in character—in legal effect, a will—and therefore did not divest Frank of ownership of the property transferred to the bank as trustee. Consequently, she argues, that property was a part of the decedent's estate in which she had a right of dower and, when she relinquished that right, she became a purchaser for value of the property coming to her under the testamentary provisions accepted in lieu of dower and may recover, free from tax, the value of her dower interest; citing *Briscoe* v. *Craig*, 32 Fed. (2d) 40; *Warner* v. *Walsh*, 15 Fed. (2d) 367; *United States* v. *Bolster*, 26 Fed. (2d) 760; *Allen* v. *Brandeis*, 29 Fed. (2d) 363, and other cases. Therefore, she contends, she should not now be taxed upon these amounts received by her from the trust, since they aggregate far less than the value of her relinquished dower interest in the estate. In support of her view she points to the fact that by the instrument the decedent retained some control over the trust property by means of his power to direct its investment; retained the power to revoke the trust; and, further, that the value of the trust property was taxed as a part of the decedent's estate both by the Commonwealth and by the Federal Government. In short, while petitioner does not deny Frank's power during his lifetime to divest himself of his personal property as he saw fit, she contends that, by the creation of this trust and the transfer of the property to it, he did not do so.

No importance need attach to the fact that the value of the trust property was included for purposes of taxation in the decedent's estate; that does not indicate an interpretation of the trust instrument as a will, nor does it mean that the trust property was a part of the decedent's estate subject to dower. It is readily apparent that the trust property might be subjected to the Federal tax under paragraph (d) of section 302, Revenue Act of 1926, which provides that the value of such property shall be so included where the grantor retains the power of revocation. See *Porter* v. *Commissioner*, 288 U.S. 436 (affirming 23 B.T.A. 1016), wherein the court said:

The net estate upon the transfer of which the tax is imposed, is not limited to property that passes from decedent at death.

Pennsylvania has a statute of similar effect which affords sufficient authority for taxing the trust property, although, for purposes

of dower, it was not a part of the estate. P.L. 521; Pa. St. 1920, par. 20465; *Dolan's Estate*, 279 Pa. 582; *Spangler's Estate*, 281 Pa. 118.

We see no reason sufficient to impel us to regard the trust instrument as a will. It evidenced an intention and accomplished the purpose of immediately divesting Frank of his legal title to the property transferred, reserving to himself a life interest in the income, and vesting a beneficial remainder interest in the several beneficiaries. Having disposed of the property during his lifetime, it was not a part of his estate at his death subject to dower and consequently his widow had no dower interest therein to relinquish. It is true that Frank retained the power to revoke the trust and repossess the property; but he did not exercise it. True also, he retained the power to direct the trustee respecting sales and reinvestment of the trust property, but, under the facts before us, that did not affect the trustee's title or ownership. Nor would the remaindermen come into possession of the corpus until the termination of the life interests in the trust, but it is well settled by the decisions of the Pennsylvania courts that the postponement of possession by the *cestui que trustent*, the reservation by the grantor of the trust income for his life, and his reservation of the power to revoke do not invalidate the trust nor prove it a disposition of property to take effect after death. See *Windolph* v. *Girard Trust Co.*, 245 Pa. 349; *Benkart* v. *Commonwealth Trust Co.*, 269 Pa. 257, and cases there cited.

Petitioner recognizes this long established rule, but seeks to distinguish the case at bar on the fact that the donor retained a right of control over the property. But in the *Windolph* case the donor reserved a right of control to the extent that her permission was necessary before the trustee could reinvest in any but a certain class of securities, and it appears, moreover, that the donor there was consulted by the trustee respecting all reinvestments. The court found, however, that the evidence tending to show that the settlor continued to exercise the control of an owner over the property was insufficient to invalidate the trust. Here we have no evidence whatever as to any control exercised by the donor over the property. In such circumstances we are not prepared to say that the reservation by Frank of the power to direct investments interfered with the trustee's ownership to such an extent as to nullify the transfer. See also *Houston's Estate*, 276 Pa. 330, where the deed was sustained although the settlor retained power, jointly with the trustee, to change investments.

Petitioner relies strongly upon a decision in *Beaumont's Estate*, 214 Pa. 445, wherein the court held a trust deed to be testamentary in character. Analysis of that decision readily distinguishes it. There the deed made no final disposition of certain bonds trans-

ferred to a trustee for the specific purpose of using the income therefrom to meet premiums on an insurance policy so that the maturity of the policy would discharge the trust, so far as it concerned the bonds, and they, necessarily, would revert to the donor or to his estate. In the case at bar, the trust property is definitely disposed of under the terms of the instrument and therefore the cited case is not applicable.

It may be, as petitioner contends, that Frank's intention at the time he created the trust is of little importance. However, in our opinion, it is clear that it was *not* his intention to make a trust deed testamentary in character. He already had a will, and he made a codicil to it on the very day he executed the trust instrument and transferred the bulk of his personal property to the trustees. A part of his property, including some real estate, he kept to himself and, as we see it, his intention was to let that part pass under his will and to dispose, during his lifetime, of the greater part in such a way as to insure its management and conservation for the benefit of his beneficiaries.

We conclude that the trust instrument was not testamentary in character; that the trust property was not a part of decedent's estate in which petitioner had a right of dower; and that the amounts received by her from the trustees in the years here involved are to be included in her income.

Reviewed by the Board.

*Judgment will be entered for the respondent.*