## Buchner et al. v. Buchner et al.

*Harry M. Miller*, for plaintiffs.

*Myron Jacoby, Carr & Krauss*, and *W. Heyward Myers, Jr.*, for defendants.

BLUETT, J., February 24, 1939.—This matter is before us on bill of complaint and preliminary objections filed thereto by one of the respondents. For the purposes of our present consideration, therefore, we must accept as true the facts stated in the bill.

The complainants are Henrietta Buchner (wife), who married respondent, George W. Buchner (husband), on September 19, 1913, and George Buchner, Jr. (son),

adopted by them when an infant of one week on December 18, 1922. The bill of complaint recites that on November 21, 1913, about two months after the marriage, the husband executed a deed of trust, conveying 10 mortgages and a parcel of real estate to respondent, Germantown Trust Company (trustee) and, at the same time, creating a life estate with a spendthrift provision in favor of himself, and successive life estates to Alden H. Bruton (trustee's assistant title officer) and to his wife, Kate B. Bruton, and the remainder, thereafter, to the designated beneficiary respondents in equal shares, subject to the retention of $300 for the maintenance and care of the Buchner burial plot in the Fernwood Cemetery. The deed of trust made no provision for his wife, the husband having represented himself as unmarried.

In 1929, the wife first became aware of the existence of the trust deed and on April 12, 1930, instituted equity proceedings in Court of Common Pleas No. 5 (March term, 1930, no. 8942) for its rescission and cancellation. This suit was discontinued by agreement, in consideration, as the wife alleges, of oral inducements and representations of the husband that he would resume marital relations with his wife, support and maintain both her and their minor son, and institute an action in his own name to rescind and cancel the deed of trust which he created. Thereafter, the husband did bring suit in his own name in Court of Common Pleas No. 3 (September term, 1930, no. 4619) and as a result the original deed of 1913 was modified. The life estate grants to Alden H. Bruton and his wife, Kate B., were eliminated, and successive life estates were created and reserved to the husband, the wife, and the son. (A daughter of Mrs. Buchner, not a party to these proceedings, was also provided for.) The wife joined in the written agreement, modifying the original trust, dated June 30, 1931, and agreed to execute a quit-claim deed to the trustee for the real estate described in the deed of trust. The court (C. P. No. 3) approved the

agreement and entered a decree on July 7, 1931, which modified the deed of trust in accordance with the agreement of the parties, but otherwise provided that all the other original terms and conditions should be and remain in full force and effect.

The bill avers further that notwithstanding the husband's representations, which induced the wife to terminate her action and consent to the modification agreement, he, nevertheless, immediately thereafter deserted his family, and from July 1931 to the present time wholly neglected and refused to contribute anything to their support and maintenance. The wife is now 58 years of age, in poor health, and incapable of supporting herself; the son is 16 years of age and will not reach his majority until 1943. The trust has a present value of $12,000 and an annual income of $200. Complainants seek in these proceedings to have 50 percent of the corpus of the trust applied to their support.

The trustee attacks the bill of complaint on the ground that complainants are, in effect, attempting to obtain an order of support and at the same time to modify and reform a deed of trust litigated, settled, and determined in another court. The trustee maintains also that this court has no jurisdiction to modify the decree entered by Court of Common Pleas No. 3 and possesses no power to direct the seizure of 50 percent of the corpus of the trust.

Preliminarily it may be said, if the corpus of the trust estate, as opposed to the income therefrom, were subject to seizure under law, then this court would have jurisdiction to attach such estate in this proceeding in order to enforce the payment of any support order we might enter in favor of the wife.

". . . when once a Court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute": McGowin v. Remington, 12 Pa. 56, 63; Komenarsky, Re-

ceiver, v. Brode et al., 307 Pa. 156, 158 (1932) ; Bowman v. Gum, Inc., et al., 327 Pa. 403, 412 (1937).

The Act of July 12, 1913, P. L. 711, sec. 11(*a*), as supplemented and amended, creating the Municipal Court of Philadelphia, confers upon it exclusive jurisdiction "In all proceedings brought against any husband or father, wherein it is charged that he has without reasonable cause separated himself from his wife or children, or from both, or has neglected to maintain his wife or children". See Scott v. Scott, 80 Pa. Superior Ct. 141. It is not here disputed that complainants under the facts are entitled to an order of support. Nor is it denied that under the provisions of the Act of May 10, 1921, P. L. 434, complainants are entitled to support out of the proceeds or income of the husband's life estate, to the extent of 50 percent: Naylor's Estate, 19 D. & C. 417; Moorehead's Estate, 289 Pa. 542. And if the proceeds are only $200 a year, as it is alleged, that would entitle them to $100, hardly sufficient for their support.

The real contention in this case, however, is the extent to which the trust estate may be made subject to attachment. The trustee respondent contends that the husband's interest in the trust property does not extend beyond a life estate and that only the income it yields is attachable under the Act of 1921, supra. For complainants it is argued, "to exercise the powers conferred upon the court by the Act of 1921 authorizing the seizure of the deserting husband's interest in a spendthrift trust, it is unnecessary for the Municipal Court to modify or reform in its technical sense the deed of trust, because the act in question gives the court the clear power to ignore and disregard the terms of a spendthrift trust to the extent provided in the act."

We cannot read such power into the act. Our view is that the Act of 1921 in no way intended to empower the court to modify the provisions of the irrevocable trust. There is one exception, however, based on public policy: The court may exempt to the extent of 50 percent the

spendthrift provisions of a trust in the case of a wife or children, where the husband or father made no provision for their support. In that sense only, we believe, has it been said that the settlor "did not contemplate or intend that the words 'contracts or debts' should apply to and include those marital obligations and duties which a husband, in the light of humanity, of sound social order and by the requirements of the law, owes to his wife": Moorehead's Estate, supra, p. 554. Here, the husband's rights in the spendthrift trust are expressly limited to the income or proceeds of the life estate he reserved to himself. To exercise dominion over the corpus would, in our opinion, entail a reformation of the trust deed. This, under the circumstances, we have no power to do.

The real question in issue, therefore, whether this court has a right to direct the seizure of 50 percent of the corpus of the trust estate—distinct from the seizure of any income—under the Act of 1921, must be determined in the negative. That a husband or wife has the right to dispose of property, belonging to him or her individually even in anticipation of death or to prevent its falling into the hands of the other thereafter, is now well-established law in Pennsylvania: Orth v. Doench, 309 Pa. 240; Windolph v. Girard Trust Co., 245 Pa. 349; Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570. The only deterrent to such disposition of property by wife or husband is fraud, which, however, has been limited and defined by Potter Title & Trust Co., Guardian, v. Braum et al., 294 Pa. 482, 485, 487:

". . . fraud will not be predicated on the mere intent of the husband to deprive his wife of her distributive share in his estate. . . .

"The evidence . . . amounts to nothing more than a statement to the effect that August Braum's motive in making the assignments was to deprive his wife of her share in his property. We have seen that this, standing alone, is not such bad faith as to constitute the fraudulent intent necessary to defeat the gift."

Therefore, despite the fact, patent in this case, that the husband deprived his wife of any interest in the corpus of his property, that, nevertheless, does not constitute "fraud" under the authority cited. But, it is contended, inasmuch as the law imposes a duty upon the husband to support' his wife she is a creditor of her husband. It is true that a wife may be deemed a creditor of her husband upon his failure to support her. It has been held, a gift by a husband of his property to third persons in order to avoid payment of alimony or maintenance is void as fraud on the wife: Bouslough v. Bouslough, 68 Pa. 495; Armstrong v. Connelly, 299 Pa. 51 (1930). In our judgment, however, this rule of law has no applicability to the facts and circumstances in this case. She (or the son) does not stand in the position of creditor within the meaning of the rule avoiding conveyances in fraud of creditors. The wife joined in the agreement (1931) which established the trust and created successive life estates for herself and son, as well as the husband, with remainder (the corpus) over to designated beneficiaries. When she became a party to the modification agreement and the establishment of the irrevocable trust, she no longer stood in the position of a creditor. The vested interests in the estate of other parties, to wit, Germantown Hospital and Dispensary of Germantown and St. Luke's and Children's Homeopathic Hospital, also intervene to prevent the seizure of the corpus by complainants. And we do not believe that the wife, after a wait of seven years to allege that she was fraudulently induced to consent to the creation of the trust under the modification agreement, can, at this late period, abridge or destroy the rights of these third-party beneficiaries.

For these reasons, we are constrained to conclude that the corpus of the estate is not subject to seizure. We find, however, that complainants are entitled to an order of support, and direct the trustee to pay over to them 50 percent of the income or proceeds of the husband's life estate.

With these exceptions, the objections to the bill are sustained. Pursuant to this order, we must also dismiss the petition for allowance of counsel fees and costs.